

**Dated: June 23, 2020.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-70114-TMD |
| KEVIN R. IDELL | § | |
| KOSTADEA BALDOUNIS | § | CHAPTER 7 |
|    Debtors. | § | |

### MEMORANDUM OPINION

**I.  INTRODUCTION**

Can a creditor exercise a right of setoff when the debtors' only default is the mere act of filing for bankruptcy?

**II.  FACTS**

Kevin R. Idell and Kostadea Baldounis ("Debtors") borrowed a $9,430 loan from Complex Community Federal Credit Union ("Credit Union"). As security, the Debtors gave the Credit Union a lien on a 2011 Harley Davidson.[1] The Debtors also gave the Credit Union the right, upon default, to set off the funds in the Debtors' accounts at the Credit Union against what

---

[1] Mot. Relief Stay, ECF No. 6 at 10.

1

the Debtors owed on the loan.[2] And the Debtors stipulated that either insolvency or a bankruptcy filing would constitute default.[3]

Seven months later, the Debtors borrowed an additional $40,445 from the Credit Union, this time secured by a Dodge Ram 2500.[4] As before, the Debtors agreed to give the Credit Union a right to setoff and that either insolvency or a bankruptcy filing were default-triggering events.[5]

The Debtors filed bankruptcy four months after taking out the second loan.[6] In response, the Credit Union placed an administrative freeze on the Debtors' deposit accounts.[7] Six days after the filing, the Credit Union sought relief from the automatic stay to set off the funds in the Debtors' accounts against the two loans.[8]

When they filed for bankruptcy, the Debtors had $5,106 on deposit in two accounts with the Credit Union.[9] The Debtors owe $45,198 on the loans.[10] The Court conducted a hearing on the Credit Union's motion. At the hearing, the Credit Union admitted the Debtors were current on their payments but argued that Debtors defaulted on their loans because they were insolvent.[11]

Two months later the Debtors and the Credit Union filed reaffirmation agreements[12] in which both parties agreed the 2011 Harley was worth $6,000[13] and the 2014 Dodge Ram was

---

[2] Mot. Relief Stay, ECF No. 6 at 12.
[3] *Id*. These contracts specify:
   "We can enforce a statutory lien against . . . interest and deposits, in all individual and joint accounts You have with Us to satisfy any financial obligation . . . . The statutory lien and/or Your pledge will allow Us to apply the funds in Your account(s) to what You owe when You are in default." Under the contracts, default includes the act of filing for bankruptcy or becoming insolvent.
[4] *Id*. at 16.
[5] *Id*.
[6] Voluntary Pet., ECF No. 1.
[7] Although the Debtors argued otherwise, this administrative freeze did not violate the automatic stay. *See*, *Citizens Bank of Maryland v. Strumpf*, 116 S.Ct. 286 (1995).
[8] Mot. Relief Stay, ECF No. 6.
[9] *Id*. at 2.
[10] *Id*.
[11] Hr'g on Mot. Relief Stay (Aug. 27, 2019).
[12] Reaffirmation Agreements, ECF Nos. 33, 34.
[13] Reaffirmation Agreement, ECF No. 33, at 1.

worth $26,000.[14] Because the Debtors still owe $6,518 on the 2011 Harley and $38,679 on the 2014 Dodge Ram, the Credit Union is under-secured on both pieces of collateral. As part of the reaffirmation agreements, the Debtors also agreed that the Credit Union could set off the amounts in the Debtors' accounts against the debt if the lift stay motion is granted.[15]

Although the Debtors were underwater on both vehicles, their attorney signed these reaffirmation agreements. This act, together with the fact that a credit union held the debts, made the reaffirmations automatically effective without the need of court review.[16] As a result, the discharge was entered, and the motion for relief from stay became moot.[17] That said, the Court will consider the Credit Union to have amended its motion to seek relief from the post-discharge injunction.

### III. ANALYSIS

A right to setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'"[18] Here, the Credit Union seeks relief to take the Debtors' two deposit accounts, totaling $5,106, and to keep this money for its own account by setting it off against, and reducing, the Debtors' outstanding debt from $45,198 to $40,092.

Ordinarily, a creditor wishing to exercise a right to setoff must do three things: First, prove that right to setoff exists under state law; second, show section 553 preserves this state created right; and third, request and provide the necessary cause for a court to lift the automatic

---

[14] Reaffirmation Agreement, ECF No. 34, at 1.
[15] Reaffirmation Agreements, ECF Nos. 33, 34.
[16] See §524(m)(2).
[17] See §362(c)(2)(C).
[18] *Citizens Bank of Maryland v. Strumpf*, 116 S.Ct. 286, 289 (1995)(citing *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)).

stay so the creditor can exercise their established right to setoff.[19] Here, however, because the parties have entered into a reaffirmation agreement and a discharge has been granted, the Credit Union need only establish its right to setoff under state law.

### A. The discharge injunction.

Pre-discharge, the automatic stay under section 362 bars any right to setoff without sufficient cause and court approval. Post-discharge, the discharge injunction replaces the automatic stay. Here, the discharge under section 524(a)(2) states "a discharge in a case under this title—operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."[20]

### B. The Reaffirmation Agreements remove the discharge injunction.

Although the Debtors received their discharge, the discharge injunction does not apply here because the debts were reaffirmed.[21] Section 524(c) allows debtors to reaffirm debts pre-discharge and assume personal liability post-discharge for those debts. Here, all requirements under section 524(c) are satisfied and the agreements became automatically effective under section 524(m). Thus, the discharge injunction does not apply because the Debtors have

---

[19] The Bankruptcy Code does not create the right to set off debts. Rather, it imposes limits on setoff rights that exist under state law. According to the Fifth Circuit, section 553 limits setoff rights by imposing three requirements: "1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case. 2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case. 3. The debt and the claim are mutual obligations." *Braniff Airways, Inc. v. Exxon, Co.*, 814 F.2d 1030, 1035 (5th Cir. 1987). Additionally, section 362(a)(7) of the automatic stay prohibits creditors from automatically exercising an otherwise valid right to set off debts against estate property.

Here, before discharge, there was no right to setoff because the right existed post-petition. The Credit Union's right to setoff arises from a default triggered solely by the bankruptcy filing—not by insolvency and not by a pre-petition monetary default. By the contracts' own terms, that default cannot exist before the bankruptcy filing because it was only triggered when the Debtors' filed for bankruptcy. *See In re Flannery*, 556 B.R. 319, 325 (Bankr. E.D. Michigan 2016) (addressing the same issue and finding that without a pre-bankruptcy default, a creditor may not exercise a right to setoff). *See also Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 289 (1995) (emphasizing that a creditor's right to setoff must exist pre-petition). The Debtors were current on their loan payments before filing for bankruptcy. Because there is no pre-petition default, the Bankruptcy Code's requirements under section 553 are not satisfied, so there was no pre-discharge right to setoff.

[20] §524(a)(2).

[21] *See* Reaffirmation Agreements, ECF Nos. 33, 34.

contractually agreed to be personally liable for the full amount of the 2014 Dodge Ram and 2011 Harley debts and because the reaffirmation agreements reflecting that undertaking have become effective.

**C. There is no right to setoff under Texas law because the debt is unmatured and the Debtors are not insolvent.**

Because the reaffirmation agreements reinforce the Debtors' personal liability post-discharge, these contracts govern the Credit Union's potential right to setoff debts. Contract law is a matter of state law so we look to Texas for guidance.

**1. Does Texas state law apply? If so, does Texas provide for a right to set off debts?**

The right to setoff exists under Texas' state law. "[T]he nature, existence and enforceability of claims sought to be set off are determined by applying the law of the state where the operative facts occurred."[22] Here, all facts occurred in Texas so Texas state law applies. The Texas Financial Code specifically grants credit unions "a right to setoff against the member's . . . deposits."[23] And so, under Texas law the Credit Union possesses a right to setoff. Even so, this right applies only to certain debts.

**2. Are there limitations under Texas' right to set off debts?**

Under Texas law, a creditor's right to setoff generally only applies to matured debt.[24] The difference between matured and unmatured debt is one of timing: "[a] claim is 'unmatured' if the time for performance of the underlying obligation has not yet arrived, and thus, the obligation is not yet due and owing."[25] Here, the Debtors' loan contracts for the 2011 Harley and the 2014 Ram involve a series of installment payments. The Debtors were current on their payments at the

---

[22] *In re Williams*, 61 B.R. 567, 571 (Bankr. N.D. Tex. 1986).
[23] Tex. Fin. Code Ann. §125.404.
[24] *Elizarraras v. Bank of El Paso*, 631 F.2d 366, 371 (5th Cir. 1980).
[25] 5 Collier on Bankruptcy P 553.03 Unmatured Status of Claims; Eligibility for Setoff.

time of their bankruptcy filing. Because the remaining payments were future payments, the debt for which the Credit Union is trying to offset is unmatured, and setoff would not generally be allowed.

### 3. Texas' right to setoff does not apply because there is no proof the Debtors are insolvent.

As noted by the 5th Circuit in *Elizarraras v. Bank of El Paso*, "a setoff may only be used against a matured debt unless the debtor is insolvent in which case the bank can set off against an unmatured claim."[26] Under the Bankruptcy Code a person is insolvent when "the sum of such entity's debts is greater than all of such entity's property."[27] Although the Bankruptcy Code contains a presumption of insolvency, that presumption only applies to preferential transfers.[28] And there are cases in the chapter 11 context holding that bankruptcy filings are not limited to insolvent debtors.[29] There is thus no statutory or other basis for presuming the Debtors are insolvent simply because they filed for bankruptcy. Furthermore, the Credit Union has not proven the Debtors are insolvent; the Court has no properly admitted evidence to support such a finding.[30] More importantly, the Debtors have received a discharge. Although that discharge

---

[26] *Elizarraras v. Bank of El Paso* 631 F.2d 366, 371 (5th Cir. 1980) (surveying Texas cases discussing the right to setoff as applied to matured and unmatured debt and rejecting the notion of a blanket rule which would allow creditors to set off any contingent debt).

[27] 11 U.S.C. §101(32).

[28] 11 U.S.C. §547(f): "**for the purposes of this section**, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." (emphasis added)

[29] *See, e.g.*, *In re Gen. Growth Properties, Inc.*, 409 B.R. 43, 61 (Bankr. S.D.N.Y. 2009) ("It is well established that the Bankruptcy Code does not require that a debtor be insolvent prior to filing."); *Marshall v. Marshall (In re Marshall)*, 403 B.R. 668, 685 (C.D. Cal. 2009) ("As a statutory matter, precedent in this and other circuits makes abundantly clear that the Bankruptcy Code has no insolvency requirement.").

[30] For the first time at the hearing, the Credit Union argued that the Debtors defaulted, triggering the setoff right, because they were insolvent pre-bankruptcy. As support for this argument, the Credit Union referenced the schedules of assets and liabilities, a garnishment order, and other creditors' judgments against the Debtors. The Credit Union did not raise this argument in its Motion for Relief from Stay [ECF No. 6] and cites no supporting authority. Moreover, the Credit Union introduced no exhibits at the hearing and did not ask the Court to take judicial notice of the schedules. Although the schedules do support a finding of insolvency, for the sake of procedural fairness the Court will not take notice because the Debtors were not made aware of a request for judicial notice at the hearing when the Debtors had the chance to address the issue. *See* Fed. R. Evid. 201(e). Later, in its Post-Trial Brief [ECF No. 18, para. 2] the Credit Union simply says, "The Debtors have admitted that they were insolvent prior

6

does not apply to the Credit Union debt, it does operate to wipe out the Debtor's other unsecured debts. On this basis, the Court finds that the Credit Union does not have an exercisable right to setoff.

### D. The Credit Union does not have a right to setoff because there are no defaults under the contract.

At present, there are no defaults triggering a right to setoff. Originally, when the Debtors filed for bankruptcy, they were in default under the agreement, and remained in default as long as the Debtors were in bankruptcy. Yet section 553 shielded the Credit Union from acting on their contractual right to setoff because the Debtors were current on their payments and there was no pre-petition default. Under the pre-petition contract, the default was triggered by the act of filing for bankruptcy, which is post-petition. Once the Debtors received their discharge and emerged from bankruptcy, they were no longer protected by section 553. But their discharge also cured the default of filing bankruptcy. As of now, there is no default to trigger the Credit Union's right to setoff.

### IV.  CONCLUSION

The Motion should be denied.

---

to filing for bankruptcy." Again, no support was given. At the hearing the Debtors suggested they were insolvent but only as a result of their bankruptcy filing. As discussed above, merely filing for bankruptcy does not trigger the presumption of insolvency.